# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **TOURCATS, INC.** <br> 28960 Lakeland Boulevard <br> Wickliffe, Ohio 44092, <br><br> Plaintiff, <br><br> -vs- <br><br> **TRANSPORT CUSTOM DESIGNS, LLC** <br> 240 Streibergh Lane <br> Montoursville, Pennsylvania 17754, <br><br> Defendant. | CASE NO.: <br><br> JUDGE: <br><br><br><br><br> **COMPLAINT** <br><br> **(JURY DEMAND ENDORSED HEREON)** |

**NOW COMES** Plaintiff Tourcats Inc., by and through undersigned counsel, and for its Complaint alleges as follows:

## INTRODUCTION

1. Plaintiff Tourcats, Inc. ("Tourcats" or "Plaintiff"), an Ohio corporation, brings this present action for breach of contract and related claims against Defendant Transport Custom Designs, LLC ("Transport" or "Defendant"), a Pennsylvania limited liability company.

2. Tourcats has been providing backstage and tour catering to top-tier musicians and bands for more than 20 years. At events and concerts, Tourcats prepares three meals a day for the band and touring crew, serving several hundreds of meals each day.

## PARTIES

3. Tourcats is an Ohio corporation, whose principal place of business is located in Wickliffe, Ohio.

4. Transport is a Pennsylvania limited liability corporation, whose principal place of business is located in Montoursville, Pennsylvania.

## **JURISDICTION AND VENUE**

5. This is an action for economic damages and loss suffered by Tourcats as a direct and proximate result of Transport's negligent and wrongful conduct in connection with Defendant's design, development, construction, and renovation of mobile kitchen trailers which Tourcats utilizes in its business. As a result of Defendant' negligent and wrongful conduct in connection with the design, development, manufacture, and testing of the mobile kitchen trailers Tourcats has suffered economic damages and loss.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different States.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) in that Plaintiff and Defendant transact business within this judicial district and the mobile kitchen trailers at issue in this action are located in this judicial district.

8. Consistent with the Due Process Clause, the Court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district and the mobile kitchen trailers at issue in this action were delivered by Defendant to Plaintiff in this judicial district.

9. Requiring Defendant to litigate these claims in Ohio does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution. All of Plaintiff's claims arise from conduct Defendant purposefully directed to Ohio.

## STATEMENT OF FACTS

10. To conduct its business, Tourcats utilizes mobile kitchen trailers (the "Trailers"), which are towed by large vehicles such as tour buses or converted long range haulers known as bandwagons.

11. The tour buses and bandwagons house and transport Tourcats' catering crew as well as serving as tow vehicles for the Trailers.

12. Tourcats utilizes the large tow vehicles and Trailers to travel to the various venues throughout the United States where Tourcats provides catering to bands and musicians while they are on tour.

13. In any given year, Tourcats will travel as much as 10,000 miles or more in order to provide its services to its clients from coast to coast.

14. At all times relevant to this action, Transport was engaged in the business of designing, developing, manufacturing, testing, promoting, marketing, distributing, and selling custom-made trailers.

15. At all times relevant to this action, Transport was fully aware of the nature of Tourcats' business and the demands placed upon the vehicles Tourcats uses in the extensive travel required to provide its catering services to its clients.

**Defendant's Agreement to Design and Manufacture The New Mobile Kitchen Trailer**

16. In early June 2021, Tourcats contacted Transport to inquire about Transport's ability to design and construct a new mobile kitchen trailer for Tourcats (the "New Trailer").

17. Tourcats emphasized to Transport that it needed the New Trailer to be completed no later than the beginning of November 2021 at which time Tourcats was to provide services to

3

one its biggest clients, which intended to resume touring at that time (the "Winter Tour") after having been inactive since the beginning of 2020 due to the COVID-19 pandemic.

18. At that time, in early June 2021, Transport's General Manager, Jeremy Reynolds ("Reynolds"), assured Tourcats it could design and complete the New Trailer in time for Tourcats to use it for the Winter Tour, which was to begin in early November 2021. Indeed, Reynolds stated Transport could have the trailer completed in less than two months.

19. Based on Transport's assurances that it could complete and deliver the New Trailer by early November 2021, Tourcats agreed to engage Transport for the design and construction of the New Trailer for the amount of $171,263.00.

20. On July 7, 2021, Tourcats paid Transport $85,631.50 (50% of the total amount) by wire transfer. (See Exhibits 1-3, attached hereto).

21. From July 7, 2021 through the summer and into the fall of 2021, Transport continued to assure Tourcats the New Trailer would be delivered no later than early November 2021 in time for the Winter Tour.

**Defendant's Failure to Deliver The New Trailer On Time**

22. Then, in early October 2021, Transport for the first time informed Tourcats that the New Trailer would not be ready in time for the Winter Tour.

23. This caused a significant problem for Tourcats, as without the New Trailer, it would not be able to provide services to its one biggest clients for the Winter Tour as it had promised.

24. Tourcats then determined that, in order to keep its promise to its client to provide catering for the Winter Tour, it would ask Transport to renovate an old trailer (the "Big Trailer") for use on the Winter Tour.

25. Tourcats had not planned -- or indeed even considered -- renovating the Big Trailer until Defendant informed it in early October 2021 that Defendant would not be able to comply with its promise to deliver the New Trailer in time for the Winter Tour.

26. Had Defendant delivered the New Trailer by November 2021 as promised, Plaintiff would not have renovated the Big Trailer. Defendant's failure to deliver the New Trailer in time for the Winter Tour as promised caused Tourcats significant economic loss and damages.

### Defendant's Repairs to The Big Trailer

27. On Sunday, October 10, 2021, Tourcats emailed Defendant a list of the repairs necessary to make the Big Trailer usable for the Winter Tour. (See Exhibit 4).

28. On Friday, October 15, 2021, Tourcats requested via email that Defendant provide Tourcats with an estimate of the cost to perform all the requested repairs to the Big Trailer. (See, Exhibit 5).

29. That same day, Friday, October 15, 2021, Defendant responded that it would "get you a budget figure Monday [October 18, 2021]."  (See, Exhibit 6).

30. Although Defendant failed to provide a written estimate for the repairs on October 18, 2021, it verbally informed a Tourcats representative on or about October 18, 2021, that it could perform the all requested repairs in time for the Winter Tour for an estimated cost of $35,000-$40,000.

31. On Friday, October 22, 2021, Tourcats again requested via email that Defendant provide Tourcats with a written estimate of the cost to perform all the requested repairs to the Big Trailer. (See, Exhibit 7).

32. Defendant replied that same day that it was "[s]till putting costs together, I will get you something on Monday [October 25, 2021]." (See, Exhibit 8).

5

33. Defendant failed to provide the written estimate on Monday October 25, 2021 as promised. Indeed, it did not send an estimate, invoice, or bill, of any kind, until nearly six months later, on April 19, 2022, when in an email, Reynolds, Defendant's President, stated "[a]ttached is the invoice for all of the work done to the "older" of the two trailers [the Big Trailer] that we refurbished for you." The attached invoice stated the cost to be $41,411.00. (See, Exhibits 9 and 10).

34. Because Defendant had not notified Tourcats of its inability to deliver the New Trailer in time for the Winter Tour, it created a very tight time frame for itself to complete all the repairs to the Big Trailer as listed on Tourcats' October 10, 2021 email.

35. Consequently, Defendant was not able to complete all the requested repairs in time for the Winter Tour, and Defendant completed only those repairs essential to the bare functionality of the Big Trailer.

36. Although Defendant delivered the Big Trailer to Tourcats in Wickliffe, Ohio on or about November 8, 2021, it was understood that the Big Trailer would have to returned to Defendant after the end of the Winter Tour to complete the remaining repairs.

37. It was only after the completion of all the repairs to the Big Trailer that Defendant sent the invoice on April 19, 2022, for the all work it had performed, as noted above. (See, Exhibits 9 and 10).

38. Then, inexplicably, and to Tourcats' complete surprise, *nearly two months later*, on June 8, 2022, Reynolds sent an email claiming Tourcats owed an *additional* $41,825.08 for the renovations to the Big Trailer, and attaching an invoice purportedly dated December 20, 2021. (See, Exhibits 11 and 12).

39.     Although Jeremy Reynolds asserted this was a "past due" invoice and had earlier been sent to Tourcats on December 21, 2021, Tourcats had *never* prior to June 8, 2022, received the purported additional invoice, nor received *any* communication, verbal or in writing, from Defendant prior to June 8, 2022, alleging such additional charges.

### **Defendant's Late Delivery of The New Trailer**

40.     Despite its repeated assurances to Tourcats from June 2021 through the end of September 2021 that it would deliver the New Trailer in time for the Winter Tour, as noted above, it did not inform Tourcats until early October 2021 that it would not do so, and in fact did not deliver the new mobile kitchen trailer until *six months later,* on April 14, 2022.

41.     On that date, Defendant sent Tourcats an invoice for the balance owed on the New Trailer, which was $89,224.50. (See, Exhibit 13).

42.     Tourcats immediately sent a wire that day to Defendant for the full amount owed. (See, Exhibit 14).

43.     Tourcats informed Defendant in early March 2022 it was contracted to provide services for a five-week, 18-city tour, which required that it have its bus and the New Trailer in Tupelo, Mississippi no later than Sunday, April 17, 2022.

44.     Tourcats repeatedly requested that Defendant deliver the New Trailer no later than Friday April 8, 2022, so that it would have adequate time to have the trailer's propane system tested (which test it *failed*, as discussed below in paragraphs 48-58), prepare and stock the New Trailer, and then transport it over 750 miles from Wickliffe to Tupelo.

45.     Defendant failed to the deliver the New Trailer until Thursday, April 14, 2022.

7

### The Manifold, Serious, and Dangerous Defects of The New Trailer

46. Defendant's negligent and faulty design, development, manufacture and testing of the New Trailer resulted in numerous material defects and failures, several of which resulted in dangerous situations putting the public at large and Tourcats' crew at risk of serious injury and even death.

47. Tourcats will describe these defects and failures below, in chronological order as they appeared while Tourcats was on tour with the New Trailer.

### Propane System Defects and Failures

48. The City of Cleveland Fire Department (the "CFD") has established very strict requirements for the safe use of propane as a cooking fuel for vehicles such as the New Trailer.

49. There is a single establishment in the greater Cleveland area, The Gas House, which performs a pressure test on such propane systems to detect propane leaks.

50. Vehicles such as the New Trailer must pass this test and receive a certification from The Gas House to receive the required permit from the CFD for use in the City of Cleveland.

51. The Gas House only performs this test at its location in Walton Hills, Ohio.

52. Tourcats scheduled an appointment with The Gas House to perform its test on the New Trailer on Friday, April 15, 2022, the day after Defendant delivered the New Trailer on April 14, 2022.

53. When the employee of The Gas House entered the New Trailer with his instruments to detect propane leaks, he immediately ran out of the New Trailer, proclaiming it unsafe to be in the trailer due to the voluminous amount of propane detected by his instruments.

54. The Gas House employee discontinued the test, instructing Tourcats to make repairs as soon as possible to seal and prevent the propane leaks. Needless to say, the New Trailer failed the test.

55. Tourcats returned the New Trailer to its warehouse in Wickliffe and contacted a specialist to make the required repairs.

56. Because Defendant had not delivered the New Trailer until April 14, 2022, and Tourcats had to be in Tupelo by Sunday, April 17, 2022, there was not time to return the New Trailer to The Gas House to perform a follow-up test.

57. After that time, the propane system continued to develop leaks while on tour, which Tourcats has had specialists repair as needed, in various locations on the tour.

58. As a result of Defendant's negligence in the design, manufacture, and testing of the propane system of the New Trailer, Tourcats has incurred significant expenses and devoted substantial time to monitoring the propane system for leaks.

### Serious Water Leakage

59. On April 25, 2022, during the first rainstorm Tourcats encountered on the tour, and only 11 days after Defendant delivered the New Trailer, the New Trailer leaked rain water so badly that more than two inches of water quickly covered the trailer floor, posing significant risk of injury to Tourcats' crew, as they had to prepare hundreds of meals in the trailer while standing in water more than ankle deep.

60. For several hours during the height of the storm, Tourcats had to assign one its chefs the task of clearing the trailer floor of water as best he could.

### Leveling System Failure

61. Defendant equipped the New Trailer with a sophisticated and expensive electronically controlled leveling system that consisted of, among other components, four hydraulic jacks which Defendant welded to the corners of the undercarriage of the New Trailer.

62. On May 8, 2022, the very first time Tourcats attempted to use the system, *all of the welds attaching the four jacks to the trailer failed*, causing substantial damage to the New Trailer and rendering the leveling system useless.

63. Indeed, Tourcats' crew members had to remove the system from the undercarriage to allow the trailer to be mobile and capable of being towed and transported.

64. As a result of Defendant's negligence in the design and construction of the new mobile kitchen trailer, Tourcats has incurred significant economic loss due to the failure of the leveling system and the damage caused to the trailer itself.

### Wiring System Failure

65. On June 28, 2022, the wiring system controlling the two roof top air conditioners of the New Trailer failed.

66. Tourcats was informed by the service technician who repaired the failure that the wiring was improperly installed and not properly protected from damage caused by movement as the New Trailer was transported.

67. As a result of Defendant's negligence in the design and construction of the New Trailer, Tourcats has incurred significant expenses to repair the wiring system.

### Hitch Failure

68. The most serious and dangerous failure occurred on July 15, 2022, when the hitch connecting the New Trailer to the tow vehicle failed, causing the trailer to completely separate from the tow vehicle on Interstate 64 while traveling at about 65 miles an hour.

69. It was only by sheer luck that the trailer did not collide with other vehicles on the highway which would have been catastrophic, resulting in serious injury or death for members of the public traveling on the highway at that time.

70. It was also only by sheer luck that the trailer did not suffer serious damage as a result of the failure.

71. As a result of the hitch failure, Tourcats was unable to provide catering to one of its clients on July 16, 2022, and it lost all the revenue it would have received for that event.

72. Moreover, because the New Trailer had to be towed to a repair shop, it was no longer hooked up to the bus's generator and so had no power source.

73. As a result, all the perishable food which had been stored in the trailer's refrigeration units had to be thrown away.

74. As a result of Defendant's negligence in the design and manufacture of the hitch of the New Trailer, in addition to the losses described in the preceding paragraph, Tourcats has incurred significant expenses to repair the hitch to ensure that it is safe and will not again fail.

### Trailer Brake System Failures

75. On July 24, 2022, less than two weeks after the hitch failure, the trailer's brake system failed on Interstate 90, causing one of the trailer's wheels to lock.

76. Only the skill and experience of Tourcats' driver allowed him to maintain control of the bus and trailer, averting what could have been a catastrophic accident.

77. Then, on August 16, 2022, outside of Denver Colorado, the trailer brake system failed again, this time causing a different wheel on the trailer to lock.

78. Once again, only the skill and experience of Tourcats' driver allowed him to maintain control of the bus and trailer.

79. As a result of Defendant's negligence in the design and development of the New Trailer, Tourcats has incurred significant expenses to repair the trailer brake system.

### Other Defects

80. The defects and failures described above constitute only the most egregious known to Tourcats at this time.

81. Other defects are known to Tourcats, but their extent is not yet fully known. These include, but are not limited to: (1) faulty wiring; (2) faulty propane gas piping; (3) improperly placed wiring exposed to damage in the wheel wells, and (4) faulty welds.

82. Tourcats will no doubt incur significant expenses to repair these additional defects.

### COUNT I
### BREACH OF CONTRACT

83. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

84. The parties entered into a valid and enforceable contract related to the construction and design of the New Trailer (the "New Trailer Contract").

85. Tourcats fulfilled each and everyone one of its obligations pursuant to the New Trailer Contract.

86. Defendant breached the New Trailer Contract by, among other things, failing to ensure that it was safe and free from such defects as set forth above, and by failing to complete and deliver it on time.

87. Defendant's wrongful conduct has caused Plaintiff economic loss and damages in an amount exceeding $75,000.

## COUNT II
## FRAUDULENT INDUCEMENT

88. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

89. Defendant made knowing, material misrepresentations with the intent of inducing the Plaintiff's reliance, to wit: Defendant explicitly and repeatedly represented to Plaintiff that Defendant would complete and deliver the New Trailer without defects no later than early November 2021 when it knew those representations were false or utterly disregarded their truthfulness.

90. By those representations Defendant intended to induce Plaintiff to engage Defendant to design and construct the New Trailer.

91. Plaintiff reasonably relied upon those representations, and but for them, would not have agreed to engage Defendant to design and construct the New Trailer.

92. Plaintiff suffered damages as a result of Defendant's false representations.

93. Under such circumstances, Plaintiff is entitled to punitive damages and its reasonable attorney's fees and costs under the laws of the State of Ohio.

## COUNT III
## BREACH OF IMPLIED WARRANTY - MERCHANTABILITY

94. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

95. Defendant is a merchant and/or seller of custom-made trailers.

96. Plaintiff purchased the New Trailer from Defendant and used it for the ordinary purpose for which it is used by consumers.

97. At the time it was purchased by Plaintiff, the New Trailer was not fit for the ordinary purpose for which such trailers are used.

98. The New Trailer was not fit for the ordinary purpose for which such trailers are used because it was not designed, developed, manufactured, and tested in a manner to accomplish its purpose safely and reliably.

99. Based on the foregoing, Defendant's breach of its implied warranty of merchantability caused Plaintiff's monetary losses.

100. Based on the foregoing, Defendant's breach of its implied warranty of merchantability caused Plaintiff's monetary losses.

## COUNT IV
## BREACH OF IMPLIED WARRANTY – FITNESS FOR PARTICULAR PURPOSE

101. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

102. Defendant is a merchant and/or seller of custom-made trailers.

103. Plaintiff informed Defendant of the particular purpose for which the new mobile kitchen trailer would be used.

104. At the time it was purchased by Plaintiff, the new mobile kitchen trailer was not fit for particular purpose for which Defendant knew it would be used.

105. The new mobile kitchen trailer was not fit for the particular purpose for which Defendant knew it would be used because it was not designed, developed, manufactured, and tested in a manner to accomplish its particular purpose safely and reliably.

Defendant's breach of its implied warranty of fitness for particular purpose caused Plaintiff's monetary losses.

## COUNT V
## BREACH OF EXPRESS WARRANTY

106. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

107. Defendant is a merchant and/or seller of custom-made trailers.

108. Defendant sells custom made trailers to consumers, including Plaintiff, for the ordinary purpose for which such trailers are used by consumers.

109. Defendant made representations to Plaintiff about the quality or characteristics of its custom-built trailers by affirmation of fact, promise and/or description.

110. The representations by Defendant became part of the basis of the bargain between Defendant and Plaintiff.

111. The New Trailer did not comport with the representations made by Defendant in that it was safe for the use for which it was intended and free from material defects.

112. This breach of duty by Defendant was a proximate cause of the monetary loss suffered by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant for actual and compensatory damages, which are in excess of $75,000; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

 */s/ R. Scott Heasley*
R. Scott Heasley (0087235)
Michael B. Gardner (006118)
Carly Glantz (0098428)
MEYERS, ROMAN, FRIEDBERG & LEWIS
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
Phone: (216) 831-0042
Fax:    (216) 831-0542
sheasley@meyersroman.com
mgardner@meyersroman.com
cglantz@meyersroman.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands trial by jury with the maximum number of jurors permitted by law.

 */s/ R. Scott Heasley*
R. Scott Heasley (0087235)
*Attorney for Plaintiff*