IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TOURCATS, INC., | Case No. 1:22-CV-01589 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| TRANSPORT CUSTOM DESIGNS, LLC, | MEMORANDUM OPINION AND ORDER |
| **Defendant.** | |

This matter comes before the Court upon the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant Transport Custom Designs, LLC filed on December 21, 2022. (Doc. No. 11.) Plaintiff Tourcats, Inc. filed a Brief in Opposition on February 6, 2023 to which Transport replied on February 21, 2023. (Doc. Nos. 13, 14.) For the following reasons, Transport's Motion is DENIED.

**I.     Background**

**A.     Factual Allegations**

Plaintiff Tourcats is an Ohio corporation whose principal place of business is in Wickliffe, Ohio. (Doc. No. 6, ¶ 3.) Tourcats is in the business of providing backstage and tour catering to musical acts. (*Id.* at ¶ 2.) Tourcats uses large mobile kitchen trailers, which are towed behind large vehicles such as tour buses or bandwagons. (*Id.* at ¶ 10.) Tourcats hauls its trailers across the country, often traveling as many as 10,000 miles per year to serve its clients on their tours. (*Id.* at ¶ 13.)

Defendant Transport is a Pennsylvania-based limited liability company whose members are all citizens of Pennsylvania. (*Id.* at ¶ 4.) Transport is in the business of designing, manufacturing, and selling custom-made trailers. (*Id.* at ¶ 14.) Tourcats alleges that Transport was aware of the nature of Tourcats' business at all times relevant to its First Amended Complaint. (*Id.*)

In June 2021, Tourcats contacted Transport to inquire about Transport's ability to design and build a new mobile kitchen trailer for Tourcats (hereinafter, the "New Trailer"). (*Id.* at ¶ 16.) Tourcats allegedly emphasized to Transport that it needed the New Trailer no later than October 2021 so that Tourcats could provide services to "one of its biggest clients" during the client's winter 2021 tour. (*Id.* at ¶ 17.) Allegedly, Transport's general manager Jeremy Reynolds assured Tourcats that Transport could complete the New Trailer in time for Tourcats to use it for the upcoming winter tour. (*Id.* at ¶ 18.) Tourcats alleges that, "[b]ased on Transport's assurances that it could complete and deliver the New Trailer by early November 2021, Tourcats agreed to engage Transport for the design and construction of the New Trailer for the amount of $171,263.00." (*Id.* at ¶ 19.) On July 7, 2021, Tourcats paid Transport a 50 percent deposit on the New Trailer, or $85,631.50. (*Id.* at ¶ 20; *see also* Exs. 1 – 3 to First Amended Complaint, Doc. Nos. 6-1, 6-2, 6-3.)

Tourcats alleges that from July 2021 through the fall of 2021, Transport continued to assure it that Transport would complete the New Trailer no later than November 2021. (*Id.* at ¶ 21.) However, in early October 2021, Transport informed Tourcats for the first time that the New Trailer would not be ready in time for Tourcats' winter tour. (*Id.* at ¶ 22.) Because Tourcats needed a trailer so that it could fulfill its winter tour obligations to its client, Tourcats asked Transport to renovate one of Tourcats' old trailers.[1] (*Id.* at ¶¶ 23-26.)

Ultimately, Transport did not deliver the New Trailer to Tourcats until April 14, 2022. (*Id.* at ¶ 40.) Tourcats alleges that it informed Transport in early March 2022 that Tourcats "was contracted to provide services for a five-week, 18-city tour, which required that [Tourcats] have its bus and the New Trailer in Tupelo, Mississippi no later than Sunday, April 17, 2022." (*Id.* at ¶ 43.) Tourcats

---

[1] Tourcats makes several allegations about the problems surrounding Transport's renovations to the "Big Trailer," although these allegations are not immediately relevant to resolving the instant Motion. (*See* Doc. No. 6, ¶¶ 27-39.)

2

alleges that it "repeatedly requested that Defendant deliver the New Trailer no later than Friday, April 8, 2022, so that [Tourcats] would have adequate time to have the trailer's propane system tested . . . , prepare and stock the New Trailer, and then transport it over 750 miles from Wickliffe to Tupelo." (*Id.* at ¶ 44.)

Transport delivered the New Trailer on April 14, 2022. (*Id.* at ¶¶ 40, 45.) That same day, Transport sent Tourcats an invoice for the balance owed on the trailer, $89,224.50. (*Id.* at ¶ 41; *see also* Ex. 13 to First Amended Complaint, Doc. No. 6-13.) Tourcats immediately wired Transport the balance owed. (*Id.* at ¶ 42; *see also* Ex. 14 to First Amended Complaint, Doc. No. 6-14.)

Almost immediately, Tourcats allegedly discovered "numerous material defects and failures" within the New Trailer. (*Id.* at ¶ 46.) Tourcats alleges these defects are due to Transport's "negligent and faulty design, development, manufacture and testing of the New Trailer . . . ." (*Id.*) These alleged defects included: a seriously defective propane system, which caused the New Trailer to fail its propane system inspection; significant water leakage; failure of all four of the leveling system's hydraulic jacks; wiring system failures in the two rooftop air conditioning units; a hitch failure, which caused the New Trailer to completely detach from the tow vehicle on Interstate 64, while traveling at about 65 miles per hour; and at least two separate trailer brake system failures, in which two different trailer wheels locked up at separate times while being driven on the interstate. (*Id.* at ¶¶ 48-79.) Tourcats also alleges that it is aware of other defects, but the extent of those defects are not fully known. (*Id.* at ¶ 81.) Those defects include additional wiring system problems, faulty propane gas piping, exposed wiring in the wheel wells, and faulty welds. (*Id.* at ¶ 81.)

**B.     Procedural History**

Tourcats filed the instant case on September 8, 2022. That same day, the Court ordered Tourcats to show cause as to why the Court had subject matter jurisdiction over this matter. (Doc. No. 4.) On September 15, 2022, Tourcats filed a Response to the Court's Order to Show Cause, as well as the operative First Amended Complaint. (Doc. Nos. 5, 6.) In its First Amended Complaint, Tourcats alleges five counts against Transport: (1) Breach of Contract; (2) Fraudulent Inducement; (3) Breach of Implied Warranty – Merchantability; (4) Breach of Implied Warranty – Fitness for Particular Purpose; and (5) Breach of Express Warranty. (Doc. No. 6, ¶¶ 83-112.)

Transport filed the instant Motion to Dismiss on December 21, 2022. (Doc. No. 11.) Tourcats filed its Opposition to Transport's Motion on February 6, 2023, to which Transport replied on February 21, 2023. (Doc. Nos. 13, 14.) Thus, Transport's Motion is now ripe for a decision.

**II.     Standard of Review**

Transport moves to dismiss Tourcats' Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court accepts Tourcats' factual allegations as true and construes the Complaint in the light most favorable to Tourcats. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### III. Analysis

Transport argues that Tourcats' First Amended Complaint should be dismissed under the doctrine of *forum non conveniens* because there is, purportedly, a valid forum selection clause that applies to this dispute. According to Transport, it provided Tourcats with a copy of a document titled "Limited Warranty" in April 2022, when it delivered the New Trailer. (Doc. No. 11-1, PageID# 153.) The Limited Warranty contains the following forum selection clause:

> In the event there is any claim or dispute regarding the product or the warranty, venue for litigation purposes shall be in the Court of Common Pleas of Lycoming County,

5

Pennsylvania. The law of Pennsylvania shall govern any claims or disputes regarding the product or the warranty.

(Doc. No. 11-2, PageID# 167.)

Alternatively, Transport argues that the Court should dismiss the First Amended Complaint based on the terms of the express warranty as set forth in the April 2022 Limited Warranty. (*Id.* at PageID# 157.) Specifically, Transport argues that the Limited Warranty contains a limited two-year express warranty and disclaims all other warranties, either express or implied, as follows:

**Section 1 – Warranty and repair/replace limitation:**

TRANSPORT CUSTOM DESIGNS, LLC. (TCD), of 240 Streibeigh Lane, Montoursville, Pennsylvania, warrants the goods described below (hereafter the "PRODUCT") to be free from defects in material and workmanship under normal use and service for a period of [ ] 2 YEARS from the date of purchase by the original retail purchaser.
. . .
TCD's responsibility under this warranty shall be to repair or replace, at its option, items covered by the warranty which are delivered to its manufacturing place of business or to a repair facility of an authorized agent of TCD. All costs of transportation to deliver the Product to such site shall be borne by the original purchaser. The original purchaser shall deliver the Product for warranty service as above described within 30 days after discovery of a defect.

**Section 2 – Exclusion of implied warranties:**

TCD MAKES NO OTHER EXPRESS OR IMPLIED WARRANTIES (INCLUDING ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR [PURPOSE] OR ANY IMPLIED WARRANTY OF MERCHANTABILITY) OR AFFIRMATION OF FACTS, BY WORDS OR ACT, EXCEPT AS STATED ABOVE AND NO OTHER EXPRESS WARRANTY OR AFFIRMATION OF FACT, BY WORDS OR ACT, EXCEPT AS STATED ABOVE, IS MADE OR AUTHORIZED BY TCD; THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, LIABILITIES OR OBLIGATIONS TCD MAY HAVE. THIS WARRANTY RUNS ONLY TO THE ORIGINAL RETAIL PURCHASER.

**Section 3 – Disclaimer of indirect, incidental, and consequential damages:**

> TCD disclaims and Purchaser agrees that TCD shall have no liability for indirect, incidental or consequential damages, including damages for personal injury or property damages, or for any damages arising from the use or failure of the Product or any part thereof. This disclaimer applies during and after the warranty period. TCD's sole liability and the original retail purchaser's exclusive remedy for a warranty claim, any claims against TCD for any cause whatsoever, including negligence, irrespective of whether such defects are discoverable or latent, shall be the repair or replacement of the Product at TCD's option or, at TCD's option, the return of the purchase price. In no event shall TCD's liability exceed the purchase price paid by the original retail purchaser.

(*Id.*; *see also* Doc. No. 11-2, PageID# 166-67.) Transport claims that, prior to Tourcats' purchase of the New Trailer, Transport's president told Tourcats' owner[2] that there was a two-year warranty on the New Trailer—although Transport acknowledges that it did not provide a copy of the Limited Warranty until April 2022. (Doc. No. 11-1, PageID# 153.)

Tourcats asserts three arguments in opposition to Transport's Motion. (Doc. No. 13.) First, Tourcats argues that Transport's Motion to Dismiss for *forum non conveniens* should be dismissed because there are pending issues of fact related to the purported Limited Warranty. (Doc. No. 13, PageID# 184.) Specifically, Tourcats argues that it was unaware of the existence of, and never agreed to, any purported Limited Warranty. (*Id.*) Tourcats asserts that it never saw any purported Limited Warranty until Transport filed the instant Motion on December 21, 2022. (*Id.*) Second, Tourcats argues that, even if the Court accepted as true Transport's claim that it provided a copy of the Limited Warranty to Tourcats in April 2022, according to Ohio's codified version of the Uniform Commercial

---

[2] In support of its assertion that Transport's president communicated the two-year warranty to Tourcats, Transport offers the Declaration of Joseph H. Reynolds, wherein Reynolds avers that, "[p]rior to Plaintiff's purchase of the trailer [he] personally discussed with [Tourcats' president] Mr. Weinberg the fact that the trailer included a two-year warranty." (Doc. No. 11-2, ¶ 7.) However, the Court may not consider a defendant's version of the facts on a Motion to Dismiss. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Code's § 2-207, these are no more than mere proposed additional terms to the existing contract. (*Id.* at PageID# 192.) Tourcats argues that under § 2-207(B), both a forum selection clause and a disclaimer of warranties are terms that materially alter a contract and cannot be incorporated into an existing contract unless agreed upon. (*Id.*) Tourcats argues that because it never accepted such additional material terms, these terms are not incorporated into the contract and are, thus, not binding on Tourcats. (*Id.*) Finally, Tourcats argues that Transport's Motion to Dismiss for failure to state a claim must be denied because the Court cannot consider the Limited Warranty when considering Transport's Motion because it is a disputed document outside the First Amended Complaint and Transport's "assertions regarding the Limited Warranty directly contradict Tourcats' averments." (*Id.* at PageID# 197.)

Even if, as Transport claims, Tourcats received the terms and conditions of the Limited Warranty upon delivery of the New Trailer, the Limited Warranty's terms and conditions—including its forum selection clause and its warranty disclaimers—did not become part of the parties' existing contract because these were additional terms that materially altered the contract. Ohio has codified the U.C.C.'s § 2-207 at Ohio Rev. C. § 1302.10 as follows:

> (A) A definite and seasonable expression of acceptance or a written confirmation that is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (B) The **additional terms are to be construed as proposals for addition to the contract. Between merchants, the terms become part of the contract unless** one of the following applies:
>
>> (1) The offer expressly limits acceptance to the terms of the offer.
>>
>> (2) **They materially alter it.**

8

> (3) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (C) Conduct by both parties that recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case, the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code.

Ohio Rev. C. § 1302.10, emphasis added.[3]

There is no dispute that the parties had a contract in which Tourcats agreed to purchase, and Transport agreed to build, the New Trailer. Rather, the issue is the scope of the contract's terms, specifically whether the Limited Warranty, which was delivered to Tourcats on April 14, 2022 (*see* Doc. No. 11-1, PageID# 153), is incorporated into the contract, which was formed no later than July 7, 2021. (*See* Doc. No. 6, ¶¶ 16-20; *see also* Doc. No. 6-1, 6-2, 6-3.)

Section 1302.10(B) governs when the terms of an offer do not match the terms of the acceptance. Per § 1302.10(A), a party can accept a contract *and* add terms, "so long as the acceptance is timely and a party did not require identical terms." *Northwest 1 Trucking Inc. v. Haro*, 613 F. Supp. 3d 1081, 1097 (N.D. Ill. 2020) (applying identical U.C.C. provisions under Illinois law). "Section 2-207 applies 'where an agreement has been reached orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed.'" *Id.* (quoting U.C.C. § 2-207, cmt. 1). These additional terms are "construed as proposals for addition to the contract,"

---

[3] Ohio has adopted the U.C.C.'s definition of a "merchant" as follows: "'Merchant' means a person who deals in goods of the kind or otherwise by the person's occupation holds the person out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the agent's, broker's, or other intermediary's occupation holds the person out as having such knowledge or skill." Ohio Rev. C. § 1302.01(5). Neither party disputes that Tourcats and Transports are merchants under § 2-207 of the U.C.C./§ 1302 of the Ohio Revised Code.

and "become part of the contact" *unless* the offer expressly limits acceptance to the terms of the offer, the terms "materially alter" the contract, or notification of objection is already delivered to the other party or objections are given within a reasonable time after notice is received. § 1302.10(B). Only the second condition, whether the additional terms "materially alter" the contract, is relevant here.

If the new terms "are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party." § 1302.10, cmt. 3. An alteration in terms is "material" if "it would 'result in surprise or hardship if incorporated without the express awareness' of the nonassenting party.'" *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954, 965 (N.D. Ohio 1998) (quoting *Trans–Aire International, Inc. v. Northern Adhesive Co., Inc.*, 882 F.2d 1254, 1261 (7th Cir. 1989)); *Outdoor Prods. Innovation, Inc. v. Jest Textiles, Inc.*, No. 1:18-CV-2457, 2020 WL 870953, at *10 (N.D. Ohio Feb. 20, 2020). *See also, e.g., Northwest 1 Trucking*, 613 F. Supp. 3d at 1098.

The Official Comments to § 1302.10 provide examples of clauses that either normally materially alter a contract, or do not materially alter a contract. According to Comment 4, examples of "typical clauses which would normally 'materially alter' the contract and so result in surprise or hardship if incorporated without express awareness by the other party" include:

> [A] clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches; a clause requiring a guaranty of 90% or 100% deliveries in a case such as a contract by cannery, where the usage of the trade allows greater quantity leeways; a clause reserving to the seller the power to cancel upon the buyer's failure to meet any invoice when due; a clause requiring that complaints be made in a time materially shorter than customary or reasonable.

Ohio Rev. C. § 1302.10, cmt. 4. Conversely, examples of clauses that would not normally "materially alter" the contract include:

10

> [A] clause setting forth and perhaps enlarging slightly upon the seller's exemption due to supervening causes beyond his control, similar to those covered by the provision of this Article [RC Ch 1302] on merchant's excuse by failure of presupposed conditions or a clause fixing in advance any reasonable formula of proration under such circumstances; a clause fixing a reasonable time for complaints within customary limits, or in the case of a purchase for sub-sale, providing for inspection by the sub-purchaser; a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for; a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance "with adjustment" or otherwise limiting remedy in a reasonable manner (see Sections 2-718 and 2-719 [RC 1302.92 and 1302.93]).

*Id.* at cmt. 5.

### A.      Forum Selection Clause

First, the Court addresses whether the Limited Warranty's Forum Selection Clause is a material alteration of the terms of the parties' contract.  As Tourcats concedes, it does not appear that Ohio courts have addressed the issue of whether a forum selection clause is a term that materially alters a contract.  (*See* Doc. No. 13, PageID# 192.)  However, contrary to Transport's argument in its Reply, this is not fatal to Tourcats' argument.  (Doc. No. 14, PageID# 226.)  The Supreme Court of Ohio has explicitly "noted in the past that 'it is desirable to conform our interpretations of the Uniform Commercial Code to those of our sister states.'"  *Casserlie v. Shell Oil Co.*, 121 Ohio St.3d 55, 58 (Ohio 2009) (quoting *Edward A. Kemmler Mem. Found. v. 691/733 E. Dublin–Granville Rd. Co.* (1992), 62 Ohio St.3d 494, 499, 584 N.E.2d 695).  To further this policy, the Supreme Court of Ohio refers to the Official Comments to the U.C.C., as well as other case law interpreting specific provisions, when interpreting § 1302.  *Id.*  Additionally, the court has noted that it "consider[s] the authorities from other states more fully than is customary" when interpreting the U.C.C.  *Edward A. Kemmler Mem. Found. v. 691/733 E. Dublin–Granville Rd. Co.*, 62 Ohio St.3d 494, 499 (Ohio 1992).

Thus, this Court may look to other courts' interpretations of § 2-207, in keeping with Ohio's policy of conforming its interpretation of the U.C.C. with other states.

To that end, there are myriad decisions within the Sixth Circuit, as well as other courts, all concluding that a forum selection clause materially alters a contract under U.C.C. § 2-207. *See, e.g., Metropolitan Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 567 (E.D. Mich. 2006) (applying analogous provision under Michigan law); *Wainess v. Smilemakers, Inc.*, No. 18-12177, 2018 WL 6809654, at *3-4 (E.D. Mich. Dec. 27, 2018) (citing cases) (applying analogous provision under Michigan law); *Barrette Outdoor Living, Inc. v. Vi-Chem Corp.*, No. 2:13-CV-289, 2014 WL 3579297, at *2 (E.D. Tenn. July 21, 2014) (applying analogous provision under Tennessee law); *Northwest 1 Trucking*, 613 F. Supp. 3d at 1099-1100 (citing cases) (concluding that under either Illinois or Texas state law, forum selection clauses would be material alterations under U.C.C. § 2-207); *Duro Textiles, LLC v. Sunbelt Corp.*, 12 F. Supp. 3d 221, 224 (D. Mass. 2014) (applying U.C.C. § 2-207 under Massachusetts law); *Demag Cranes & Components Corp. v. Pinnacle Indus. Servs.*, No. 1:19-cv-2209, 2021 WL 1525427, at *6 (N.D. Ohio Apr. 19, 2021) (applying Ohio Rev. C. § 1302.10).[4]

A recent case from the Northern District of Illinois, *Northwest 1 Trucking v. Haro*, is similar to this case. The plaintiff, an Illinois metal recycling company, ordered a bulldozer from the defendant, an individual in Texas who specialized in selling heavy-duty equipment. 613 F. Supp. 3d at 1086-87. The plaintiff notified the defendant that it needed a large bulldozer to excavate 30 acres

---

[4] The Court observes that these federal district courts each considered and applied their respective state's analogous U.C.C. provisions, as well the U.C.C. provisions of other states, in concluding that forum selection clauses would be material alterations to the terms of a contract under U.C.C. § 2-207 and its state-law counterparts. Thus, the Court considers these analyses of state law in reaching its own conclusion as to the materiality of forum selection clauses under Ohio Rev. C. § 1302.10. *See Casserlie*, 121 Ohio St.3d at 58.

of land. *Id.* The defendant promised the plaintiff that the machinery had a new engine and was in "perfect shape." *Id.* at 1087. The plaintiff agreed to purchase the bulldozer. *Id.* However, when the defendant delivered the bulldozer from Texas to Chicago, the bulldozer ran for two hours before it broke down and ceased to operate. *Id.* When the plaintiff sued the defendant in Illinois federal court, the defendant moved to dismiss the case based on a purported forum selection clause that mandated litigation be brought in Texas state court. *Id.* The forum selection clause was located on the back of an invoice that the defendant e-mailed to the plaintiff, but that the plaintiff claimed not to have seen until several days after paying the invoice balance. *Id.* at 1088.

The *Northwest 1 Trucking* court concluded that Illinois's version of the U.C.C.'s § 2-207 governed the dispute over whether the forum selection clause was included in the parties' contract and, therefore, enforceable. *Id.* at 1096. The court concluded that the parties entered into an oral contract for the purchase and delivery of the bulldozer and that the defendant's forum selection clause on the back of the invoice was an additional term not included in the parties' contract. *Id.* at 1096-97. Relying on caselaw from around the country, the court concluded that the forum selection clause on the back of the defendant's invoice materially altered the parties' contract. *Id.* The court observed that "[m]ost people want the ability to sue in their own backyard" and that going to a local courthouse, accompanied by a local lawyer, to trial in front of local jurors is more appealing than litigating many states away. *Id.* at 1100. Moreover, given choice-of-law considerations, the place of filing can impact the substantive law that governs a case. *Id.* Thus, the court reasoned that it would have been an "unwelcome surprise" for the plaintiff to discover, via the invoice, that the defendant had attempted to unilaterally impose a forum selection clause after the bargain was complete. *Id.* at 1101.

13

Accordingly, the Court concludes that the instant Forum Selection Clause within Transport's April 2022 Limited Warranty is a material alteration of the terms of the parties' contract. Transport did not provide the Limited Warranty terms and conditions, including the Forum Selection Clause, to Tourcats until April 2022—well after the parties formed their contract for the purchase of the New Trailer in July 2021. (Doc. No. 11-1, PageID# 153; Doc. No. 6, ¶¶ 16-20.) Thus, the Forum Selection Clause set forth in Transport's April 2022 Limited Warranty was only a proposed additional term to the contract, by operation of § 1302.10(B). As the *Northwest 1 Trucking* court observed, a forum selection clause materially alters the terms of a bargain because it affects a party's right to access the courts on a party's own backyard and may even impact the substantive law applied to a party's claims. *Northwest 1 Trucking*, 613 F. Supp. 3d at 1100-02. Thus, the instant Forum Selection Clause is a material alteration to the contract, and one to which Tourcats did not agree. Accordingly, per § 1302.10(B)(2), the Forum Selection Clause did not become part of the parties' contract and is not binding on Tourcats. *Id.*; *see also Metropolitan Alloys Corp.*, 416 F. Supp. 2d at 567. Because there is no binding forum selection clause applicable to this dispute, the Court will not disturb Tourcats' venue selection. *Id*. Transport's Motion to Dismiss pursuant to *forum non conveniens* is denied.

### B. Limited Warranty's Implied Warranty Disclaimers

The second question the Court must address is whether the Limited Warranty, including its disclaimers of various warranties, including the warranties of merchantability and fitness for particular purpose, is a material alteration to the terms of the parties' contract. Comment 4 to § 1302.10 (and to § 2-207 of the U.C.C.) expressly provides that an example of a clause that normally "materially alter[s]" a contract is "a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally

14

attaches." Ohio Rev. C. § 1302.10, cmt. 4. Accordingly, the Court concludes that Transport's Limited Warranty, including its attempt to disclaim "other express or implied warranties (including any implied warranty of fitness for a particular [purpose] or any implied warranty of merchantability)," is a material alteration to the terms of the parties' July 2021 contract. *See Cousins Smokehouse, LLC v. Louisville Processing & Cold Storage, Inc.*, 588 F. Supp. 3d 753, 759-60 (W.D. Ky. 2022) (concluding that further analysis into the defendant's argument against materiality was not required because the U.C.C. comments identified the disclaimer of an implied warranty disclaimer to be material).

Transport's counterarguments in its Reply are not persuasive. Transport argues that the Limited Warranty was part of the parties' contract—despite only providing it to Tourcats in April 2022—and that Tourcats' decision "not to ask to see the warranty, and/or [ ] not to look at it . . . does not change the fact that the Limited Warranty is the express warranty that applies to the trailer . . . ." (Doc. No. 14, PageID# 226.) This argument makes little sense. If Transport contemplated including these warranty terms in the parties' July 2021 contract, then it should have provided them prior to Tourcats' acceptance of the contract. Under Ohio law, implied warranties "can be excluded from a contract for the sale of goods *when the provisions of R.C. 1302.29 are followed.*" *Nordberg, Inc. v. Sylvester Material Co.*, 101 Ohio App.3d 89, 96 (Ohio 6th Dist. Ct. App. Feb. 10, 1995) (emphasis added). Per § 1302.29,

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion **must be by a writing and conspicuous**. Language to exclude all implied warranties of fitness is sufficient if it states for example, that "There are no warranties which extend beyond the description on the face hereof."

15

Ohio Rev. C. § 1302.29 (emphasis added). Even if the Court had the authority at the pleading stage to consider Reynolds' averment that he spoke to Tourcats' president about the existence of a two-year warranty prior to the acceptance of the contract, *see Gunasekara,* 551 F.3d at 466, there is no indication whatsoever that Transport included a "conspicuous" written disclaimer of any implied warranties. *Id.* Indeed, Transport acknowledges that it only provided Tourcats with a written copy of the terms of the Limited Warranty in April 2022. (Doc. No. 11-1, PageID# 153.) Transport cites no case law for the proposition that it need not provide specific contractual terms—particularly disclaimers of implied warranties—until after acceptance of a contract. (*See* Doc. No. 14, PageID# 226-27.) Further, Transport's citation to *Risner v. Regal Marine Industries* is inapposite. (*Id.* at PageID# 227-28.) *Risner* involved a claim of breach of express warranty brought by a private consumer against a boat manufacturer, not two merchants who negotiated a contract for the purchase of a large commercial vehicle. *Risner* addresses a scenario totally different than the one at bar.

Moreover, Transport's assertion that Tourcats "failed to substantiate that the implied warranty exclusions are material alterations" ignores the fact that Comment 4 plainly identifies such disclaimers as material. (Doc. No. 14, PageID# 227.) Transport also argues that Tourcats "provided no evidence whatsoever that the sale of a commercial trailer is a circumstance that normally includes those implie[d] warranties." (*Id.*) Transport ignores well-established Ohio law that the warranty of merchantability "arises in every sales contract in which the seller is a merchant of the goods transacted under the contract," and that the warranty of fitness for a particular purposes arises "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods for that particular purpose." *Goodyear Tire & Rubber Co.*, 7 F. Supp. 2d at 962 (quoting Ohio Rev. C.

§§ 1302.27, 1302.28). Tourcats' purchase of the New Trailer from Transport is the precise type of circumstance in which such warranties would have attached unless Transport clearly disclaimed them *before* acceptance of the contract.

Because the Limited Warranty's implied warranty disclaimers materially altered the terms of the parties' contract, by function of § 1302.10(B), it did not become binding on Tourcats. Accordingly, Transport's Motion to Dismiss based on the terms of the Limited Warranty is denied.

**IV. Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 11) is DENIED.

**IT IS SO ORDERED.**

Date: April 21, 2023

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE